NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200476-U

NO. 4-20-0476

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 19, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* P.M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
| Petitioner-Appellee, | ) | No. 20JA4 |
| v. | ) | |
| April P., | ) | Honorable |
| Respondent-Appellant). | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, concluding the trial court's finding respondent was unfit to care for her son was not against the manifest weight of the evidence.

¶ 2     Respondent, April P., appeals from the trial court's judgment making her son, P.M. (born December 20, 2019), a ward of the court and placing guardianship and custody with the Department of Children and Family Services (DCFS). On appeal, respondent argues the trial court's finding she was unfit, unable, or unwilling to care for her son was against the manifest weight of the evidence. We affirm.

¶ 3                              I. BACKGROUND

¶ 4              A. Amended Petition for Adjudication of Wardship

¶ 5     On January 8, 2020, the State filed a petition for adjudication of wardship, which it

later amended. In the amended petition, the State alleged P.M. was a neglected minor in that (1) his environment was injurious to his welfare as evidenced by the drug use by his father, Patrick M., and respondent (705 ILCS 405/2-3(1)(b) (West 2018)) and (2) as a newborn infant his blood, urine, or meconium contained an amount of controlled substance, being amphetamines, opiates, and heroin (705 ILCS 405/2-3(1)(c) (West 2018)). On the same day the initial petition was filed, the trial court conducted a shelter care hearing and placed temporary guardianship and custody with DCFS.

¶ 6                                    B. Adjudicatory Hearing

¶ 7             On August 20, 2020, the trial court held an adjudicatory hearing. Both respondent and Patrick M. admitted P.M. was a neglected minor. Based on the admissions and a supporting factual basis, the court adjudicated P.M. neglected.

¶ 8                                    C. Dispositional Hearing

¶ 9             On September 23, 2020, the trial court held a dispositional hearing. The court received a dispositional report, which provided it with the following information.

¶ 10            Immediately following his birth, P.M. was admitted to the newborn intensive care unit and tested positive for opiates and amphetamine. He was later found to be developmentally delayed and began receiving early intervention services for "speech/feeding, occupational, and developmental therapies." He also was being tested for Neonatal Abstinence Syndrome due to his inability to self-calm and his frequent outbursts of screaming and crying for unknown reasons. Since being taken into DCFS care, P.M. had been in three different placements. He had been with his current caregiver since July 2020 and appeared bonded at that placement.

¶ 11            Respondent and Patrick M. were in a romantic relationship and lived together.

Respondent admitted to using heroin two days before P.M.'s birth. She also admitted to having a history of drug use, with heroin and methamphetamine being her drugs of choice. Respondent, while pregnant with P.M., tested positive for cocaine, amphetamines, opiates, and cannabis on September 7, 2019, and opiates on December 6, 2019. On December 21, 2019, respondent was discovered in pain in the fetal position and then, within 15 minutes of Patrick M. arriving, was standing on her own and able to move around the room. Respondent had three other children who resided with their respective fathers. She previously was diagnosed with bipolar disorder. Respondent expressed a desire for treatment.

¶ 12        Both respondent and Patrick M. were directed to cooperate with DCFS, maintain stable housing and a source of income, and attend visitations. Respondent maintained contact with the caseworker and signed all necessary consent forms for releases of information. Patrick M.'s contact with the caseworker was inconsistent, and he relied on respondent to communicate for him. Both respondent and Patrick M. maintained housing together. Both reported being employed, but neither provided any verification of employment. Both attended weekly visitations. The visits went well, and both were attentive to P.M.'s needs.

¶ 13        Both respondent and Patrick M. were referred to substance abuse, counseling, and parenting services. Respondent checked herself into a detox program at the end of May 2020. After detox, she went to inpatient treatment on June 1, 2020. She then checked herself out of inpatient treatment on June 4, 2020. Respondent reported to the caseworker on several occasions that she would return to treatment but then failed to do so. In July 2020, respondent admitted to still using drugs. She failed to appear at two random drug drops. Patrick M. had not engaged in any substance abuse treatment and failed to appear for two random drug drops. The dispositional report noted

- 3 -

Patrick M. "continues to use drugs." Respondent had been engaged in individual counseling, and Patrick M. had an upcoming psychiatric assessment and sought a referral for counseling services. Both respondent and Patrick M. had completed about half of their parenting classes.

¶ 14       As to recommendations, it was undisputed P.M. should be made a ward of the court. The only issue in dispute was whether guardianship and custody should be placed with respondent and Patrick M. or DCFS. The caseworker, the State, and the guardian *ad litem* asserted guardianship and custody should be placed with DCFS. Respondent and Patrick M. asserted guardianship and custody should be placed with them because, contrary to the information gleaned from the dispositional report, they had engaged with services.

¶ 15       The trial court made P.M. a ward of the court, found both respondent and Patrick M. were "unfit, unable[,] or unwilling" to care for P.M., and placed guardianship and custody with DCFS. The court indicated the facts which formed the basis for its findings included respondent's and Patrick M.'s lack of progress with services and respondent's admission in July to still using drugs.

¶ 16       This appeal followed.

¶ 17                               II. ANALYSIS

¶ 18       On appeal, respondent argues the trial court's finding she was unfit, unable, or unwilling to care for her son was against the manifest weight of the evidence. The State disagrees.

¶ 19       The Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 to 7-1 (West 2018)) provides a two-step process for determining whether a minor should be removed from his or her parents' custody and made a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18, 981 N.E.2d 336. The first step requires the trial court to conduct an adjudicatory hearing to determine whether the

minor is abused, neglected, or dependent. *Id.* ¶ 19. If such a finding is made, the matter proceeds to the second step, which requires the court to conduct a dispositional hearing. *Id.* ¶ 21. "At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public that he [or she] be made a ward of the court." 705 ILCS 405/2-22(1) (West 2018). If such a finding is made, the court must then "determine the proper disposition best serving the health, safety[,] and interests of the minor and the public." *Id.* Under section 2-27(a) of the Act (705 ILCS 405/2-27(1) (West 2018)), a proper disposition may include placing guardianship and custody with DCFS if the minor's parents are found to be "unfit," "unable," or "unwilling" to care for the minor.

¶ 20        On review, a trial court's factual finding that a parent is unfit, unable, or unwilling to care for a minor will not be reversed unless it is against the manifest weight of the evidence. *In re K.E.S.*, 2018 IL App (2d) 170907, ¶ 51, 103 N.E.3d 934. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *In re Arthur H.*, 212 Ill. 2d 441, 464, 819 N.E.2d 734, 747 (2004).

¶ 21        Here, the evidence of record supports the trial court's finding that respondent was unfit to care for P.M. The evidence showed drug use was the reason P.M. was brought into DCFS care and both respondent and Patrick M., respondent's paramour with whom she resided, had not engaged in substance abuse services. In fact, the evidence showed respondent admitted to still using drugs two months prior to the dispositional hearing and Patrick M. "continues to use drugs." Given the above, the trial court's finding respondent was unfit to care for P.M. was not against the manifest weight of the evidence.

¶ 22                              III. CONCLUSION

- 5 -

¶ 23    We affirm the trial court's judgment.

¶ 24    Affirmed.